**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Criminal Case:  1:19-mj-00225 (RMM)** |
| **v.** | : | |
| | : | |
| | : | |
| **WHYTNEE FORIEST,** | : | |
| **Defendant** | : | |

**UNITED STATES MEMORANDUM AND**
**PROFFER IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully submits this memorandum in support of its oral motion to have

the defendant, Whytnee Foriest (hereinafter "defendant"), detained pending trial.  On September

4, 2019, the defendant was charged via complaint with one count of violating 18 U.S.C. §

1752(a)(1) (entering or remaining in restricted buildings or grounds) and one count of violating

D.C. Code § 22-3302(b) (unlawful entry (public property).  At the defendant's initial appearance

before this Court, the government requested that the defendant be detained because he charged

because there is a serious risk that she will flee.  18 U.S.C. § (f)(2)(A).  The government also

made a motion for a competency hearing and requested that the defendant undergo a twenty-four

hour forensic screening pursuant to 18 U.S.C. §§ 4241 and 4247, both of which were granted by

the Court over the defense's objection.  The Court scheduled a detention hearing on the

government's request for Friday, September 6, 2019.  The twenty-four forensic screening is

scheduled for Monday, September 9, 2019.  For the reasons stated below, the government

requests that the defendant be detained pending trial.

**Principles Governing Requests for Detention**

The Bail Reform Act lists four factors that guide a court's pre-trial detention decision: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).  At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *Smith*, 79 F.3d at 1209.   When the government seeks to detain a defendant on the ground that he is a risk of flight pursuant to 18 U.S.C. § 3142 (f)(2)(A), the government must demonstrate the defendant's flight risk by a preponderance of the evidence.  *United States v. Xulam,* 84 F.3d 441, 442 (D.C. Cir. 1996).

**Factual Proffer of the Evidence Supporting the Detention**

The government proffers the sworn statement of facts in support of a criminal complaint [ECF No. 1] ("sworn statement"), which it incorporates herein.

As noted in the sworn statement, while on bicycle patrol in full Secret Service Police Uniform, Officer Marko Bowen observed the defendant run barefoot across Pennsylvania Avenue, and approach the White House barricade.  The defendant had her flip flops in her hand while she ran.  Officer Bowen followed the defendant to the barricade - bicycle racks used as portable security barriers of the White House.  The security barrier is interlocked, and has visible signage stating "Restricted Area DO NOT ENTER."  Officer Bowen observed the defendant, from her running start, kick one leg over the barrier, and then fall backwards onto the public area of Pennsylvania Avenue after her leg hit the barrier.  Officer Bowen detained the defendant and

moved her away from the restricted area which she had attempted to enter, as she did not have permission or authority to be in the restricted area. The North Fence Line of the White House was closed as a result of the incident. While detained and seated on the curb of Pennsylvania Avenue, the defendant stated that she wanted to get into the White House. No further statements were made.

The defendant was subsequently advised of her Miranda Rights by Special Agent William Rose and agreed to answer questions at approximately 1500 hours. When SA Rose asked the defendant what her purpose was for coming to the White House and why was she attempting to climb the White House Fence, the defendant informed SA Rose that she was not trying to climb the White House fence at all, but instead she was trying to demonstrate her round house kick because she was training for the National Guard. SA Rose further asked the defendant if she has been diagnosed with any type of mental illness; she responded "I have all of them" and referenced Bi-Polar and Schizophrenia. No medication was found on the defendant's person; a prescription bottle for an unidentified medicine was however, found in her vehicle which was illegally parked in a crosswalk on the 800 block of Vermont Street, NW.

Following SA Rose's interview, in conversation with Officer Bowen, the defendant stated that she had come to the White House to see "Trump," the President of the United States.

Upon arriving at the MPD 2nd District for processing, the defendant stated she needed medication and was transported to Sibley Hospital.

## Argument

In light of the pending twenty-four hour forensic evaluation and the indicators of a possible mental health issue, the Court should defer ruling on the government's request for detention until after a full competency evaluation, a competency hearing, and any necessary period of competency

treatment. "[I]f there is reasonable cause to believe that a defendant has a mental disease rendering him unable to understand the nature and consequences of the proceedings and against him and/or to assist in his defense, it makes sense that the preliminary hearing and detention hearing be deferred until such time as the defendant has been determined to be mentally competent." *United States v. Moser*, 541 F. Supp. 2d 1235, 1237 (W.D. Okla. 2008). *But see*, "[T]he need for scrutinizing a defendant's understanding of the proceedings at initial phases appears to be somewhat lesser than during trial." *United States v. Crawford*, 738 F. Supp. 564, 565 (D.D.C. 1990). Furthermore, where there are concerns about a defendant's competency to understand the proceedings, it is also difficult to assess in any meaningful way the defendant's risk of flight.

However, if the Court is inclined to rule on the government's detention motion at the September 6th hearing, the Court should find that the defendant should be detained pending trial because she is a serious risk of flight. 18 U.S.C. § 3142(f)(2)(A). A judicial determination that a defendant should be detained pending trial as a serious risk of flight need only be supported by a preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 328 (D.C. Cir. 1986). At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In making its decision, the Court must consider four statutory factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. §3142(g). Consideration of these factors based on the factual proffer below will establish by a preponderance of the evidence that there is no

condition or combination of conditions that would reasonably assure the defendant's appearance at this time.  Consequently, the defendant should be detained pending trial.

The defendant is charged with attempting to enter and remain in a restricted area – the White House and its grounds and the Government's evidence that she did so is strong.  Her actions were witnessed by a USSS personnel and were likely captured on White House surveillance cameras.[1]  The defendant was witnessed running, with her shoes in hand, toward the security barrier of the White House on Pennsylvania Avenue and attempting to jump over it.  But for her leg hitting the barrier and causing her to fall backwards onto the public portion of the sidewalk, the defendant would have crossed into the restricted area.  Moreover, as the defendant twice explained to USSS personnel, she wanted to get in the White House, admitting at least once that she wanted to see the President.  While the defendant also advised the interviewing agents that she was only practicing her roundhouse kick when she put her leg over the barrier, that explanation does not match to the physical actions she was observed undertaking.

As related to her history and characteristics, the defendant is unemployed.  She resides with her grandmother in Portsmouth, Virginia, and was in the city visiting friends.  In September 2016, the defendant was arrested in Washington, DC for violating a civil protection order issued to her ex-husband, demonstrating a disregard for a Court order.[2]

As to the risk her release would pose to the safety of others or the community, the defendant has a history of interactions with law enforcement related to her mental health status and actions. In July 2016, a temporary detention order was served on the defendant by the Loudoun County Sheriff's Office in Virginia.  In August 2016, the Riverdale Park (Maryland) police responded to

---

[1] The area in which the incident occurred is routine surveilled, but the Government cannot represent that it actually was caught on surveillance video, as the USSS is currently reviewing the footage from that date and time.
[2] The violation was ultimately no papered.

a Wells Fargo Bank after the defendant was reportedly harassing customers and pointed her fingers at bank in employees like a gun.  The defendant told police she was sent to protect police and prevent bloodshed, and believed everyone at the bank was working for the devil. Afer speaking with her, the police sent her on her way. In September 2016, the defendant's ex-husband called police after she violated a civil protection order (CPO).  The CPO was issued in July 2016 and was valid through July 2017 and required the defendant to stay 100 ft away from her ex-husband, his residence, and work.  As noted above, the defendant was arrested.  In June 2017, the Loudon County Sheriff's Office responded to a Harris for an emotionally disturbed person.  The defendant was claiming to be an illuminati princess and having classified information from the CIA.  She told deputies the FBI was after her and claimed she worked for the CIA.  In response, an emergency custody order was issued and the defendant voluntarily went to a hospital for an evaluation.  In July 2017, the Leesburg, Virginia police issued a temporary detention order for the defendant.  In April 2018, the Hyattsville, (MD) Police responded to a residence after the defendant tried to kick down a door in an attempt to attack the homeowner.  The defendant stated she believed she was a secret agent who worked for the "shadow government" and had received information that the homeowner was a terrorist.  An emergency custody order was again issued and she was taken to a local hospital.  Finally, this past June, the defendant visited the Portsmouth, Virginia police headquarters and requested to speak with the FBI about human trafficking. She claimed to be a federal informant and produced a nonsensical piece of paper that she believed proved her claim. However, she was uncooperative with police and would not provide further information when asked.

## Conclusion

For the foregoing reasons, the Government requests that the Court order that the defendant be detained pending trial.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By: _____/s/_____
REAGAN N. CLYNE
Special Assistant United States Attorney
Virginia Bar Number 74767
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7215
Email: Reagan.Clyne@usdoj.gov